UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

    Plaintiff,        No.  1:13-cr-190

  v.            Hon. Robert J. Jonker
                U.S. District Judge

KIM DURON MULDER,
RICHARD MICHAEL CLARKE,
LAWRENCE ANTHONY HARDEN,
ERIN RIVARD,
JESSICA LYNN VELDKAMP,
ELIZABETH CATHERINE MORGAN,    **SUPERSEDING INDICTMENT**
MICHELLE SHEDD,
HEATHER HARDEN, and
GARY WILLIAM FRANKS,

    Defendants.
_____/

  The Grand Jury charges:

### INTRODUCTION

  1.  Kentwood Pharmacy, L.L.C. ("Kentwood Pharmacy") filed articles of organization on or about February 13, 2001 with the Michigan Department of Consumer and Industry Services.  On or about March 27, 2001, the Michigan Department of Licensing and Regulatory Affairs issued Kentwood Pharmacy a Pharmacy license and Controlled Substance Facility license.

  2.  From before 2006 to November 2, 2010, Kentwood Pharmacy operated both a retail pharmacy business and a closed pharmacy that was not open to the public.  The closed

pharmacy serviced patients residing in adult foster care homes and skilled nursing homes ("the homes"). By 2010, Kentwood Pharmacy was servicing approximately 800 homes.

3. The defendant KIM DURON MULDER was the chief executive officer of Kentwood Pharmacy. The defendant RICHARD MICHAEL CLARKE served as the Sales Director. The defendant LAWRENCE ANTHONY HARDEN was a staff pharmacist and later assumed the role of chief pharmacist. The defendant ERIN RIVARD was a staff pharmacist. The defendant JESSICA LYNN VELDKAMP was a drug packer and later assumed the role of pharmacy floor manager. The defendant ELIZABETH CATHERINE MORGAN was as an account manager and later assumed the role of billing manager. The defendant MICHELLE SHEDD was a licensed practical nurse who worked in the billing department and later as a customer service representative. The defendant HEATHER HARDEN was a drug packer. The defendant GARY WILLIAM FRANKS was the distribution manager.

4. The United States Food and Drug Administration ("FDA") was the agency of the United States responsible for protecting the health and safety of the public by enforcing the Federal Food Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* ("FDCA") and ensuring, among other things, that drugs and devices intended for use in humans were safe and effective for their intended use and that the labeling of such drugs and devices bore true and accurate information. Pursuant to such responsibility, FDA published and administered regulations relating to the approval, manufacture, and distribution of drugs and devices.

5. Pursuant to provisions of the FDCA, the term "drug" includes articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals and articles (other than food) intended to affect the structure or any function of the body of a man or other animal. 21 U.S.C. § 321(g)(1)(B) & (C). The FDCA defines the term "label"

to mean "a display of written, printed, or graphic matter upon the immediate container of any article." 21 U.S.C. § 321(k). Under the FDCA, the term "labeling" means "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m).

6. The FDCA further provides that a drug is deemed to be "misbranded" if "its labeling is false or misleading in any particular." 21 U.S.C. § 352(a). According to FDA regulations, "[t]he lot number on the label of a drug should be capable of yielding the complete manufacturing history of the package. An incorrect lot number may be regarded as causing the article to be misbranded." 21 C.F.R. § 201.18.

7. The FDCA prohibits the doing of any act and causing any act to be done with respect to a drug while the drug, or any of its components, was held for sale after shipment in interstate commerce, if such act resulted in the drug being misbranded. 21 U.S.C. § 331(k).

## COUNT 1
### (Conspiracy To Cause Drugs Held For Sale To Be Misbranded)

8. Beginning in or before 2006 and continuing through November 2, 2010, in the Southern Division of the Western District of Michigan and elsewhere, the defendants,

**KIM DURON MULDER,**
**RICHARD MICHAEL CLARKE,**
**LAWRENCE ANTHONY HARDEN,**
**ERIN RIVARD,**
**JESSICA LYNN VELDKAMP,**
**ELIZABETH CATHERINE MORGAN,**
**MICHELLE SHEDD,**
**HEATHER HARDEN, and**
**GARY WILLIAM FRANKS,**

combined, conspired, confederated and agreed with each other and with other persons, both known and unknown to the grand jury, to perform and cause to be performed certain acts with respect to drugs, while such drugs were held for sale after shipment in interstate commerce, with the intent to defraud and mislead, which resulted in the drugs being misbranded, in violation of Title 21, United States Code, Sections 331(k), 333(a)(2), and 352(a) and Title 18 U.S.C. § 371.

### PURPOSES OF THE CONSPIRACY

9. It was the purpose of the conspiracy to return previously dispensed drugs to stock so that Kentwood Pharmacy could re-dispense the drugs and charge health insurance providers multiple times for the dispensing of the same drugs. It was further a purpose of the conspiracy to place the previously dispensed drugs into manufacturer stock bottles in order conceal the illegal re-dispensing of returned drugs.

### MANNER AND MEANS OF THE CONSPIRACY

10. It was part of the conspiracy that the defendants picked up and caused to be picked up previously dispensed drugs from the homes that Kentwood Pharmacy serviced.

11. It was further part of the conspiracy that the defendants directed others to unpack returned drugs.

12. It was further part of the conspiracy that the defendants placed and caused to be placed the returned drugs into manufacturer stock bottles, resulting in the comingling of such previously dispensed drugs with drugs that had never been dispensed. It was further part of the conspiracy that the defendants placed and caused to be placed previously dispensed drugs into amber vials. The lot number and expiration date of drugs that were placed into the manufacturer stock bottles did not correspond to the lot number and expiration date listed on the manufacturer stock bottles to which the returned drugs were placed. The amber vials into which the returned drugs were placed often contained no lot number or expiration dates.

13. It was further part of the conspiracy that the defendants placed and caused to be placed the stock bottles and amber vials containing the returned drugs back onto the stock shelves of Kentwood Pharmacy.

14. It was further part of the conspiracy that the defendants dispensed and caused to be dispensed the returned drugs in the stock bottles and the amber vials to persons in the homes.

15. It was further part of the conspiracy that the defendants hid the restocking and dispensing of returned drugs from Kentwood Pharmacy employees after several employees complained about the safety and legality of the handling of the returned drugs.

16. It was further part of the conspiracy that the defendants set up storage and sorting operations for the returned drugs at unlicensed Kentwood Pharmacy facilities and private homes.

17. It was further part of the conspiracy that the defendants billed and directed others to bill health insurance providers for the returned drugs which were dispensed.

18. It was further part of the conspiracy that the defendants misrepresented to the homes what Kentwood Pharmacy was doing with the returned drugs and misrepresented to the homes that Kentwood Pharmacy was properly handling the returned drugs.

## OVERT ACTS

19. In furtherance of the conspiracy, and to accomplish its purposes, the defendants committed and caused to be committed, in the Western District of Michigan and elsewhere, the following overt acts:

20. KIM DURON MULDER and RICHARD MICHAEL CLARKE directed salespersons and employees to offer to pick up unused drugs from the homes which Kentwood Pharmacy serviced. The homes accumulated unused drugs for a variety of reasons including because patients died, patients transferred from the homes, patients' prescriptions changed, and incorrect drugs were delivered to the homes for the patients.

21. KIM DURON MULDER, RICHARD MICHAEL CLARKE, and GARY WILLIAM FRANKS directed the Kentwood Pharmacy drivers to pick up any unused drugs when the drivers delivered drugs to the homes. KIM DURON MULDER, RICHARD MICHAEL CLARKE, and GARY WILLIAM FRANKS directed the drivers to deliver such unused drugs picked up from the homes ("the returned drugs") to the Kentwood Pharmacy facilities.

22. From at least 2006 through about 2009, KIM DURON MULDER directed drug packers to unpack, sort, and restock the returned drugs at the licensed Kentwood Pharmacy facilities, including 6680 Kalamazoo Street and 2480 44th Street in Kentwood, Michigan. KIM DURON MULDER also directed the drug packers to place the returned drugs into manufacturer stock bottles and amber vials and place those stock bottles and amber vials onto the stock shelves

6

at Kentwood Pharmacy. KIM DURON MULDER also directed drug packers to use the returned drugs contained in the manufacturer stock bottles and amber vials to fill new prescriptions to be dispensed.

23. Beginning in or about the summer of 2009, JESSICA LYNN VELDKAMP directed the drug packers to use the returned drugs contained in the manufacturer stock bottles and amber vials to fill new prescriptions to be dispensed.

24. In or about the spring of 2009, GARY WILLIAM FRANKS directed drivers to remove returned drugs from their packaging, put the returned drugs into amber vials, dump the drugs in the amber vials into corresponding manufacturer stock bottles, and place the stock bottles back onto the stock shelves of Kentwood Pharmacy.

25. From in or about the spring of 2009 until in or about the beginning of 2010, ERIN RIVARD reviewed the returned drugs sorted by the packers and approved the restocking of these returned drugs into manufacturer stock bottles which were placed back onto the stock shelves at Kentwood Pharmacy to be re-dispensed.

26. Beginning in or about early 2010, KIM DURON MULDER directed employees to unpack and sort the returned drugs at a Kentwood Pharmacy corporate office, which was not a licensed Kentwood Pharmacy facility, located in a strip mall at 1994-1996 44th Street in Kentwood, Michigan. KIM DURON MULDER further directed the employees to sort the drugs into amber vials and deliver the drugs to the licensed Kentwood Pharmacy facility located at 2480 44th Street where the amber vials were placed onto the stock shelves to be re-dispensed.

27. In or about early spring of 2010, KIM DURON MULDER, RICHARD MICHAEL CLARKE, and LAWRENCE ANTHONY HARDEN delivered the returned drugs to a residence, which was not a licensed Kentwood Pharmacy facility, located at 2424 Lake Drive

in East Grand Rapids, Michigan where the returned drugs were sorted and stored for a period of weeks.

28. In or about late spring of 2010, KIM DURON MULDER directed other employees of Kentwood Pharmacy to unpack and sort the returned drugs at the unlicensed Kentwood Pharmacy corporate office located in a strip mall at 1994-1996 44th Street in Kentwood, Michigan.

29. In or about late spring of 2010, during the evening hours when other employees were not at working at Kentwood Pharmacy, KIM DURON MULDER, RICHARD MICHAEL CLARKE, LAWRENCE ANTHONY HARDEN, and MICHELLE SHEDD participated in taking the amber vials containing the returned drugs, which had been sorted at the strip mall corporate office, back to the licensed Kentwood Pharmacy facility located at 2480 44th Street. KIM DURON MULDER, RICHARD MICHAEL CLARKE, LAWRENCE ANTHONY HARDEN, and MICHELLE SHEDD removed the returned drugs from the amber vials and placed the returned drugs into manufacturer stock bottles and placed the stock bottles onto the stock shelves.

30. In or about the summer of 2010, KIM DURON MULDER directed a Kentwood Pharmacy employee to construct a drug-sorting station and stock shelves in the basement residence of LAWRENCE ANTHONY HARDEN and HEATHER HARDEN, which was not a licensed Kentwood Pharmacy facility.

31. In or about the late summer of 2010, KIM DURON MULDER and LAWRENCE ANTHONY HARDEN directed HEATHER HARDEN to sort returned drugs in the basement of the residence belonging to LAWRENCE ANTHONY HARDEN and HEATHER HARDEN.

32. From in or about the late summer of 2010 to on or about November 2, 2010, KIM DURON MULDER, LAWRENCE ANTHONY HARDEN, HEATHER HARDEN and JESSICA LYNN VELDKAMP told Kentwood Pharmacy employees that HEATHER HARDEN was working as a floating drug packer at various Kentwood Pharmacy licensed facilities in order to conceal her actual work sorting returned drugs in the basement of the residence belonging to LAWRENCE ANTHONY HARDEN and HEATHER HARDEN.

33. From in or about the late summer of 2010 to on or about November 2, 2010, KIM DURON MULDER, RICHARD MICHAEL CLARKE, LAWRENCE ANTHONY HARDEN and JESSICA LYNN VELDKAMP told Kentwood Pharmacy employees to place emptied manufacturer stock bottles with their caps into a recycling can.

34. From in or about the late summer of 2010 to on or about November 2, 2010, KIM DURON MULDER, LAWRENCE ANTHONY HARDEN and RICHARD MICHAEL CLARKE delivered returned drugs and emptied manufacturer stock bottles from the Kentwood Pharmacy facility located at 2480 44th Street in Kentwood, Michigan to the residence of LAWRENCE ANTHONY HARDEN and HEATHER HARDEN for the purpose of sorting the returned drugs.

35. From in or about the late summer of 2010 to on or about November 2, 2010, in the basement of the residence belonging to LAWRENCE ANTHONY HARDEN and HEATHER HARDEN, HEATHER HARDEN sorted returned drugs and placed these drugs into the emptied manufacturer stock bottles.

36. From in or about the late summer of 2010 to on or about November 2, 2010, KIM DURON MULDER, LAWRENCE ANTHONY HARDEN and RICHARD MICHAEL CLARKE took the manufacturer stock bottles filled with returned drugs from the residence of

9

LAWRENCE ANTHONY HARDEN and HEATHER HARDEN and delivered the drugs to the Kentwood Pharmacy facility located at 2480 44th Street in Kentwood, Michigan. During weekends and evenings when other employees were not present, KIM DURON MULDER, LAWRENCE ANTHONY HARDEN and RICHARD MICHAEL CLARKE placed the manufacturer stock bottles with returned drugs onto the stock shelves at the Kentwood Pharmacy facility located at 2480 44th Street in Kentwood, Michigan.

37. In or about October 2010, LAWRENCE ANTHONY HARDEN told a Kentwood staff pharmacist that Kentwood Pharmacy was no longer using returned drugs.

38. In or about the summer and fall of 2010, KIM DURON MULDER directed employees to respond to inquiries by various homes about anonymous letters that the homes received alleging the improper return, restocking and re-dispensing of returned drugs. During this same time period, KIM DURON MULDER, RICHARD MICHAEL CLARKE, MICHELLE SHEDD and ELIZABETH CATHERINE MORGAN drafted responsive letters to the homes denying the allegations of the improper return, restocking, and re-dispensing of returned drugs.

39. On or about September 7, 2010, RICHARD MICHAEL CLARKE and ELIZABETH CATHERINE MORGAN signed a letter to a home denying the allegations about illegal conduct, including the restocking of returned drugs, and claiming that Kentwood Pharmacy was operating "concurrent with all State and Federal guidelines."

40. On or about September 14, 2010, KIM DURON MULDER signed a letter to a home denying the allegations about illegal conduct, including the restocking of returned drugs, and claiming that Kentwood Pharmacy was operating "concurrent with all State and Federal guidelines."

21 U.S.C. §§ 331(k), 333(a)(2), and 352(a)
18 U.S.C. § 371

## COUNT 2
### (Structuring)

41. On or about October 5 and October 6, 2009, in the Western District of Michigan, Southern Division, the Defendant,

**KIM DURON MULDER,**

knowingly and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, did structure currency transactions, to wit: the Defendant made cash deposits of $9,800.00, $9,700.00, and $9,500.00 of United States currency at three different branches of Huntington National Bank on October 5, 2009 and cash deposits of $9,700, $7,800, and $2,010.00 of United States currency at three different branches of Huntington National Bank on October 6, 2009.

31 U.S.C. § 5324(a)(3)
31 U.S.C. § 5324(d)(1)

## COUNT 3
**(Conspiracy To Make And Use False Documents In Connection With Health Care Benefits)**

42. Beginning in 2009 and continuing through November 2, 2010, in the Southern Division of the Western District of Michigan, the defendants,

**KIM DURON MULDER,
LAWRENCE ANTHONY HARDEN, and
ELIZABETH CATHERINE MORGAN,**

combined, conspired, confederated and agreed with each other and with other persons, both known and unknown to the grand jury, to knowingly and willfully make and use materially false documents, in matters involving health care benefit programs, knowing the same to contain materially false, fictitious and fraudulent statements and entries in connection with the delivery of and payment for health care benefits, items and services, in violation of 18 U.S.C. § 1035(a)(2) and 18 U.S.C. § 371.

### PURPOSES OF THE CONSPIRACY

43. It was the purpose of the conspiracy to create false records of prescriptions for drugs that Kentwood Pharmacy dispensed when no prescription was actually issued or no record of the prescription could be found. It was the further purpose of the conspiracy to create such false prescription records in order to avoid findings of record deficiencies during health insurance provider audits.

### OVERT ACTS

44. In furtherance of the conspiracy, and to accomplish its purposes, the defendants committed and caused to be committed, in the Western District of Michigan and elsewhere, the following overt acts:

45.     In or about 2009, KIM DURON MULDER instructed ELIZABETH CATHERINE MORGAN to create any false records necessary to avoid findings of record deficiencies by health insurance provider audits.

46.     Beginning in 2009 and continuing through November 2010, LAWRENCE ANTHONY HARDEN and ELIZABETH CATHERINE MORGAN compiled lists of prescriptions that were missing in the records. During this same time period, LAWRENCE ANTHONY HARDEN and ELIZABETH CATHERINE MORGAN created false prescription records to match drugs that were billed to health insurance providers.

18 U.S.C. § 1035(a)(2)
18 U.S.C. § 371

                                        A TRUE BILL

                                        _____
                                        GRAND JURY FOREPERSON

PATRICK A. MILES, Jr.
United States Attorney

_____
RAYMOND E. BECKERING III
Assistant United States Attorney

13